**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PEACE ELLUVASUN ALLAH CUSH-EL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:22-cv-00656-RWS |
| | ) | |
| STATE OF MISSOURI, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Peace Elluvasun Allah Cush-El for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $2.50. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss plaintiff's complaint without prejudice.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

In support of his motion for leave to proceed in forma pauperis, plaintiff has submitted a copy of his inmate account statement. (Docket No. 2 at 3). The account statement shows an average monthly deposit of $12.50. The Court will therefore assess an initial partial filing fee of $2.50, which is 20 percent of plaintiff's average monthly deposit.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should

construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is a self-represented litigant who is currently incarcerated at the St. Louis County Justice Center (SLCJC) in Clayton, Missouri. He brings this civil action pursuant to 42 U.S.C. § 1983, naming the State of Missouri, Governor Mike Parson, Missouri Attorney General Eric Schmitt, former United States Attorney General William Barr, Prosecutor Wesley Bell, New York Stock Exchange (NYSE) CEO Stacy Cunningham, and UMB Bank Financial Corporation CEO John Mariner Kemper as defendants. (Docket No. 1-1 at 1). All the defendants are sued in their individual capacities only. (Docket No. 1 at 2-3; Docket No. 1-1 at 3). The complaint is hand-written on a Court-provided form. With additional sheets and exhibits, it is ninety-six pages long.[1] The majority of the complaint regards plaintiff's contention that defendants – who he calls

---

[1] The Court notes that it has reviewed the entirety of the complaint, including all attachments, and will treat such exhibits as part of the pleadings. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes"). *See also Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (stating that "while ordinarily, only the facts alleged in the complaint are considered in determining whether it states a claim, materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint"); and *Pratt v. Corrections Corp. of America*, 124 Fed. Appx. 465, 466 (8th Cir. 2005) (explaining that "the district court was required to consider the allegations not only in [plaintiff's] pro se complaint, but also in his motion to amend, his response to defendants' motion to dismiss, and the attachments to those pleadings").

"creditors" – violated an "automatic stay" in his Chapter 7 bankruptcy proceedings by arresting him in Rowan County, North Carolina, and extraditing him to the SLCJC. (Docket No. 1 at 4).

In the "Facts" section of his complaint, plaintiff asserts that he sent to defendants a "UCC Aboriginal Trust Security Agreement," four Freedom of Information Act (FOIA) requests, a "Notice of Bankruptcy," an "Administrative Default Judgment," a "Federal Trade Commission Affidavit," and an "Order of Discharge" from his Chapter 7 bankruptcy. (Docket No. 1-1 at 3). He explains that the purpose of these requests was for defendants "to provide information from their General Obligation Bonds and Comprehensive Annual Financial Report via account #19SL-CR04392." (Docket No. 1-1 at 5). The Court notes that the "account" referenced by plaintiff is a pending criminal case in which he is charged with three counts of statutory sodomy or attempted statutory sodomy, and one count of first-degree statutory rape or attempted statutory rape. *State of Missouri v. Cush-El*, No. 19SL-CR04392-01 (21st Jud. Cir., St. Louis County).[2]

According to plaintiff, he made this demand "to satisfy the requester that this state inc. is operating within the bounds of the law and is not operating as a Corporate Entity that has dissolved its sovereignty." To that end, he wants defendants "to provide information from their SEC files or from the files of their parent company in reference" to his Missouri state criminal case. (Docket No. 1-1 at 6). In other words, defendants are required to show "that they have [a] legitimate claim and interest in respect to the contract-note-security-bond in accordance with all applicable law," including the National Bank Act, the Consumer Credit Protection Act, the Fair Debt Collection Practices Act, the Fair Credit Reporting Act, and the Truth in Lending Act.

---

[2] The Court reviewed plaintiff's criminal case on Case.net, Missouri's online case management system, and takes judicial notice of these public records. *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (explaining that district court may take judicial notice of public state records); and *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (stating that courts "may take judicial notice of judicial opinions and public records").

Plaintiff insists that defendants must "provide [him] a copy of the original contract" – by which he means his criminal case, *State of Missouri v. Cush-El*, No. 19SL-CR04392-01 – and "certify that they are willing to have it inspected for authenticity." (Docket No. 1-1 at 7). They must also "certify their affirmation that they followed all applicable federal, state and contract law," in order to "satisfy [plaintiff] that this financial entity is operating within the bounds of the law…and that they have a legitimate claim as a creditor and holder in due course."

To support his propositions, plaintiff refers to the Uniform Commercial Code (U.C.C.). (Docket No. 1-1 at 8). In particular, he relies on U.C.C. § 3-305, regarding defenses and claims in recoupment, which he quotes at length. (Docket No. 1-1 at 8-9). Plaintiff argues that defendants are bound by the Fourteenth Amendment to respond to his information requests, and have failed. (Docket No. 1-1 at 10). Because they have failed to respond, he asserts that defendants are in "default in their lawful duty of record to legally verify the alleged claim as required by law and as stated specifically in their oaths of office which obligate them to follow said laws." (Docket No. 1-1 at 11). As such, plaintiff states that he is "officially executing [an] administrative default to be reflected for the record."

In a section of the complaint titled "Cause of Action," plaintiff lists defendants' alleged failures with more particularity. (Docket No. 1-1 at 12). First, he asserts that defendants "failed to produce [his] original signature in respect to the alleged claim/contract[,] and failed to state for the record who the alleged original claimant was based on the proceeding laws." Second, plaintiff contends that defendants "failed to provide an affidavit certifying that as [fiduciaries] for the institution they did not breach any federal, state, contractual commercial or official oath in carrying out the alleged contract/claim." Third, he insists that defendants "failed to certify that they did not unlawfully" use his signature without his consent, and that defendants have "failed to substantiate

5

for the record that they did not" use his "identity in a fraudulent or illegal manner or [convert his] true identity into a fictitious identity in collusion with a third party." Finally, plaintiff accuses defendants of failing "to provide documents pertaining to any stock, securities, bond[s] etc. associated with account #19SL-CR03492 et al. on the NYSE…or any other State Stock Exchange or County/Municipal Stock Exchange."

Plaintiff closes the "Cause of Action" section of his complaint by alleging that defendants "have participated in fraud along with illegal transactions in respect to their claim, have violated their oaths of office and thus violated federal law and subsequent state law and commercial statutes that apply." (Docket No. 1-1 at 13).

Aside from the framing of his criminal case as a contractual violation, plaintiff also complains about the food he is receiving in the SLCJC. (Docket No. 1-1 at 16). He states that he has asked for "healthy phototrophic foods," but that he has been "fed…only heterotrophic foods causing an adverse effect on [his] health."

By way of further explanation, plaintiff asserts that his religion is "Peace of Mind [and] Kindness of Body," and that based on this religion, he has certain requirements that must be met. (Docket No. 1-1 at 34). One of these requirements is the ability to eat "phototrophic" foods. According to plaintiff, phototrophic organisms "synthesize solar radiation as the most viable form of biological energy processing," stimulating and activating "all other processes of energy production, physiological processes, and construction of anatomy." (Docket No. 1-1 at 38).

"Heterotrophic organisms," on the other hand, "are anti-solar and have their genesis in post cataclysmic earth events." These heterotrophic foods – including peanuts, soybeans, string beans, kidney beans, eggs, white rice, broccoli, cauliflower, and potatoes – "are nitrogen fixators" and are toxic. (Docket No. 1-1 at 39). Plaintiff believes that being served heterotrophic foods are the

"biological cause of disease," and that he is suffering symptoms including bloody stool, extreme fatigue, dizziness, headaches, vomiting, abdominal pains, and chest pains due to his diet. (Docket No. 1-1 at 16, 41, 45).

Based on these facts, plaintiff seeks "[a] preliminary and permanent injunction ordering creditor/defendant agent Wesley Bell to [officially] release the judicial lien against plaintiff and his property." (Docket No. 1-1 at 14). In other words, he appears to be asking for his state criminal case to be dismissed. Plaintiff also requests $80,000 in compensatory damages from each defendant, and $80,000 in punitive damages from each defendant.

## Discussion

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983, alleging that defendants violated his constitutional rights by having him arrested in North Carolina, extradited to Missouri, and detained in the SLCJC. Because he is proceeding in forma pauperis, the Court has reviewed his complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss this action without prejudice.

### A. Claim Against the State of Missouri

Plaintiff has named the State of Missouri – which he refers to as "State of Missouri, Inc." – as a defendant in this action. This claim is barred by sovereign immunity. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer sovereign immunity on an un-consenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). *See also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); *Dover Elevator*

*Co. v. Ark. State Univ.*, 64 F.3d 442, 446 (8th Cir. 1995) ("The Eleventh Amendment bars private parties from suing a state in federal court"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment"). This immunity bars suit against a state or its agencies for any kind of relief, not merely monetary damages. *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (stating that district court erred in allowing plaintiff to proceed against state university for injunctive relief, and remanding matter to district court for dismissal).

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." *Id*. The second exception is when a state waives its immunity to suit in federal court. *Id*. at 65. A state will be found to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987). Neither exception is applicable in this case.

The first exception does not apply because the Supreme Court has determined that 42 U.S.C. § 1983 – under which this case arises – does not revoke a state's Eleventh Amendment immunity from suit in federal court. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); and *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe…that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). The second exception is inapplicable

8

because Missouri has not waived its immunity in this type of case. *See* RSMo § 537.600 (explaining that sovereign immunity is "in effect," and providing exceptions relating to the "negligent acts or omissions by public employees arising out of the operation of motor vehicles…within the course of their employment," and regarding "[i]njuries caused by the condition of a public entity's property").

In this case, plaintiff is attempting to sue the State of Missouri. Such a claim is barred, whether he is seeking monetary damages or injunctive relief. Furthermore, neither exception to sovereign immunity is present here. Therefore, the claim against the State of Missouri must be dismissed.

**B. Claims Against Governor Parson, Attorney General Schmitt, and Attorney General Barr**

Plaintiff has named Governor Parson, Missouri Attorney General Schmitt, and former United States Attorney General Barr as defendants. They are sued in their individual capacities only. These claims must be dismissed for failure to state a claim and for frivolousness.

**i.    Failure to State an Individual Capacity Claim**

Individual liability in a 42 U.S.C. § 1983 case is personal. *See Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any

alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

Here, plaintiff has not established that defendants Parson, Schmitt, and Barr were personally responsible for violating his constitutional rights. Indeed, he does not allege that these defendants took any actions whatsoever. For example, plaintiff has not alleged that they investigated his criminal case, arrested him, arranged for his extradition, or had any role in his ongoing proceeding. Rather, the only time these defendants are mentioned is in reference to plaintiff's assertions that he sent them various FOIA requests and affidavits. Even assuming that defendants received – and were able to interpret – these legally-dubious documents, there is no support for the proposition that they were responsible for answering them, and that a failure to answer amounted to a constitutional violation. Therefore, plaintiff has failed to state individual capacity claims against defendants Parson, Schmitt, and Barr.

### ii.    Frivolousness

Pursuant to 28 U.S.C. § 1915, a court may dismiss a complaint as frivolous if it lacks an arguable basis in law or fact. *Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992). When dealing with factual frivolity, courts are given "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Such a dismissal encompasses allegations that are fanciful, fantastic, and delusional. *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Id*.

In this case, though the logic can be hard to discern, plaintiff appears to be attacking his state court criminal proceeding by reframing it as a commercial transaction governed by the U.C.C. and a variety of other statutes. As best the Court can tell, plaintiff recorded a U.C.C. financing statement on himself as a "Corp[orate] Citizen." (Docket No. 1-4 at 1). He later filed a Chapter 7 bankruptcy action in the Middle District of North Carolina, for which an order of discharge was granted. (Docket No. 1-6 at 1, 3). Plaintiff alleges that defendants "violated" [his] bankruptcy [Chapter 7] automatic stay" by arresting him. Furthermore, because he believes his criminal case is actually an "account" governed by the U.C.C., he insists that defendants are required to respond to his demands, including requests for an affidavit asserting "they did not breach any federal, state, contractual commercial or official oath in carrying out the alleged contract/claim." Defendants' failure to comply purportedly puts them into default and demonstrates that they have committed fraud.

Plaintiff's arguments are similar to those made by "sovereign citizens," who generally contend that the United States "is made up of two types of people: those who are sovereign citizens by virtue of Article IV of the Constitution, and those who are corporate or Fourteenth Amendment citizens by virtue of the ratification of the Fourteenth Amendment." *See United States v. Hobbs*, 2012 WL 2458425, at *11 (E.D. Mo. 2012).

According to the United States Court of Appeals for the Eighth Circuit, "[s]overeign citizens are a loosely-affiliated group who believe government in the United States operates illegitimately and outside the bounds of its jurisdiction." *Waters v. Madson*, 911 F.3d 725, 732 n.4 (8th Cir. 2019). *See also United States v. Barraza*, 982 F.3d 1106, 1113 n.3 (8th Cir. 2020). Some sovereign citizens believe that the United States Government "operates solely on a credit system using American citizens as collateral." *El v. AmeriCredit Fin. Servs., Inc.*, 710 F.3d 748, 750 (7th

11

Cir. 2013). Others believe they are not subject to the jurisdiction of the courts and often deny they are the defendants in a particular action. *See United States v. Sterling*, 738 F.3d 228, 233 n.1 (11th Cir. 2013).

Such jurisdictional arguments have been deemed frivolous. *See United States v. Hart*, 701 F.2d 749, 750 (8th Cir. 1983) (stating that appellant's assertion that federal courts "have no civil jurisdiction over a sovereign citizen" was frivolous); *United States v. Simonson*, 563 Fed. Appx. 514 (8th Cir. 2014) (stating that appellants' argument "that they are special, sovereign citizens" was frivolous); and *United States v. Hardin*, 489 Fed. Appx. 984, 985 (8th Cir. 2012) (rejecting as meritless appellant's challenges to the district court's jurisdiction based on his status as a sovereign citizen). In short, the arguments of sovereign citizens "are completely without merit, patently frivolous, and will be rejected without expending any more of this Court's resources on their discussions." *See United States v. Jagim*, 978 F.2d 1032, 1036 (8th Cir. 1992). To put it in other words: the U.C.C. "has no bearing on criminal subject matter jurisdiction." *Flanagan v. United States*, 2014 WL 1315230, at *6 (E.D. Mo. 2014), quoting *United States v. Mitchell*, 405 F.Supp.2d 602, 604 (D. Md. 2005).

As noted above, a complaint is frivolous if it lacks an arguable basis in law or fact. Plaintiff's sovereign citizen-type allegations have been widely rejected elsewhere as meritless and frivolous. Therefore, for this reason as well, his claims against defendants Parson, Schmitt, and Barr must be dismissed.

**C.  Claim Against Prosecutor Bell**

Plaintiff has named Prosecutor Bell as a defendant, suing Bell in his individual capacity only. This claim must be dismissed because Bell is immune from suit. In addition, the claim fails to state a claim and is frivolous.

### i.      Prosecutorial Immunity

Prosecutors are immune from 42 U.S.C. § 1983 liability so long as the actions complained of appear to be within the scope of prosecutorial duties. *Price v. Moody*, 677 F.2d 676, 677 (8th Cir. 1982). *See also Keating v. Martin*, 638 F.2d 1121, 1122 (8th Cir. 1980). The immunity enjoyed by prosecutors from § 1983 actions can be either absolute or qualified. *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996). A prosecutor is entitled to absolute immunity if he or she is acting as an advocate for the state in a criminal prosecution. *Id*. On the other hand, a prosecutor is entitled to only qualified immunity when he or she pursues actions in an "investigatory" or "administrative" capacity. *Id*.

"Absolute immunity protects prosecutors against claims arising from their initiation of a prosecution and presenting a criminal case insofar as that conduct is intimately associated with the judicial phase of the criminal process." *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016). For instance, "[t]he acts of preparing, signing, and filing a criminal complaint constitute prosecutorial functions, as they are advocacy on behalf of the government." *Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006).

Prosecutorial immunity depends on the functional nature of the prosecutor's activities; therefore, immunity is not defeated by "allegations of improper motive in the performance of prosecutorial functions." *Sample*, 836 F.3d at 916. Absolute immunity still applies even when there are allegations of malice, vindictiveness, or self-interest. *Reasonover v. City of St. Louis, Mo.*, 447 F.3d 569, 580 (8th Cir. 2006). Absolute immunity also "covers actions taken to initiate a prosecution, even if those actions are patently improper." *Saterdalen v. Spencer*, 725 F.3d 838, 842 (8th Cir. 2013). *See also Woodworth v. Hulshof*, 891 F.3d 1083, 1089 (8th Cir. 2018)

(explaining "that a prosecutor is immune from suit even if he knowingly presented false, misleading, or perjured testimony or withheld or suppressed exculpatory evidence").

In this case, defendant Bell is alleged to be the "prosecuting attorney" of plaintiff's criminal case. To the extent that plaintiff seeks to hold Prosecutor Bell liable for initiating his prosecution, or for participating "with the judicial phase of the criminal process," Bell has absolute immunity. As there is no indication that Prosecutor Bell did anything other than act as an advocate on behalf of the state, plaintiff's claim must be dismissed.

### ii. Failure to State a Claim

Similar to defendants Parson, Schmitt, and Barr, plaintiff has failed to state an individual capacity claim against Prosecutor Bell. Such liability under 42 U.S.C. § 1983 "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga*, 442 F.3d at 1132.

The necessary causal link is missing here. More to the point, plaintiff has not accused Prosecutor Bell of taking any specific actions whatsoever. While it can be assumed that, as a prosecutor, Bell played some role in plaintiff's criminal case, there is no indication as to what that role consisted, much less that it involved a constitutional violation. The only time Prosecutor Bell is mentioned, it is in reference to FOIA requests and demands sent by plaintiff. There is no support for the proposition that Bell had a constitutional responsibility to respond to these documents, which are based on the unsound legal premise that his criminal case is governed by commercial law. Therefore, plaintiff has failed to state a claim against Prosecutor Bell, and the individual capacity claim against him must be dismissed.

14

### iii.      Frivolousness

Plaintiff's claim against Prosecutor Bell is also frivolous, as it lacks an arguable basis in law or fact. *See Martinez*, 977 F.2d at 423. As discussed at length above, he presents a sovereign citizen-type claim in which he suggests that his criminal proceedings are actually commercial and contractual in nature. Because Prosecutor Bell – and the other defendants – failed to adhere to the U.C.C. and other commercial regulations, he believes that Bell must cease plaintiff's criminal prosecution. This proposition is without merit and legally frivolous. *See Jagim*, 978 F.2d at 1036. Therefore, for this reason as well, the individual capacity claim against Prosecutor Bell must be dismissed.

## D. Claims Against Defendants Cunningham and Kemper

Plaintiff has sued defendants Cunningham and Kemper in their individual capacities. Both are alleged to be CEOs of private companies.

In order to state a claim for relief under 42 U.S.C. § 1983, "a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). With regard to the first element, a defendant can only be held liable pursuant to § 1983 for actions taken under color of state law. *Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008). *See also Magee v. Trustees of Hamline Univ., Minn.*, 747 F.3d 532, 535 (8th Cir. 2014) (stating that § 1983 "imposes liability for certain actions taken under color of law that deprive a person of a right secured by the Constitution and laws of the United States"); *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that § 1983 secures constitutional rights from government infringement, not infringement by private

parties); and *Montano v. Hedgepeth*, 120 F.3d 844, 848 (8th Cir. 1997) (stating that pursuant to §
1983, "the challenged conduct must have been committed by one who acts under color of law").

When a private party acts under color of state law, it can be held liable under 42 U.S.C. §
1983. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). However,
a private party may only be held liable "if it is a willful participant in joint activity with the State
or its agents." *Gibson v. Regions Fin. Corp.*, 557 F.3d 842, 846 (8th Cir. 2009). In order to state a
claim against a private party under § 1983, the plaintiff "must allege, at the very least, that there
was a mutual understanding, or a meeting of the minds, between the private party and the state
actor." *Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993).

In this case, neither Cunningham or Kemper are alleged to be state actors or acting under
the authority of state law. Rather, both are private citizens who work for private companies. There
is nothing in the 96-page complaint to indicate that they engaged in a joint activity with the State
of Missouri, or reached a mutual understanding or meeting of the minds. Indeed, it is difficult to
imagine what role the CEO of the NYSE and the CEO of UMB Bank Financial would have in
plaintiff's state criminal case, which does not pertain to financial matters. Because Cunningham
and Kemper were not acting under color of law, plaintiff's 42 U.S.C. § 1983 claims against them
must be dismissed.

The Court notes that even if Cunningham and Kemper were presumed to have acted under
color of law, the claims against them would still be subject to dismissal. As set forth above, plaintiff
has failed to state a claim, as he has not demonstrated that defendants were personally responsible
for violating his constitutional rights. Moreover, his underlying legal theory – in which he asserts
that his criminal case is governed by the U.C.C. – is legally frivolous. Therefore, for these reasons
as well, plaintiff's individual capacity claims against Cunningham and Kemper must be dismissed.

**E.  Inadequate Nutrition Claims**

Plaintiff has stated that he is a pretrial detainee. Accordingly, his constitutional claims fall within the ambit of the Fourteenth Amendment. *See Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010). Though the Eighth Amendment is not applicable, the Fourteenth Amendment's Due Process clause "imposes analogous duties on jailers to care for detainees." *Christian v. Wagner*, 623 F.3d 608, 613 (8th Cir. 2010).

Regarding nutrition, the Eighth Amendment provides that prisoners have a right to nutritionally adequate food. *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992). *See also Burgin v. Nix*, 899 F.2d 733, 734 (8th Cir. 1990) ("One constitutional protection retained by the prisoner is the right to an adequate diet"). While control of the diet is within the discretion of prison officials, the diet must be adequate. *Divers v. Dep't of Corrs.*, 921 F.2d 191, 194 (8th Cir. 1990). A plaintiff can demonstrate that his right to an adequate diet was violated by evidence "that the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food." *Ingrassia v. Schafer*, 825 F.3d 891, 897 (8th Cir. 2016). *See also Obama v. Burl*, 477 Fed. Appx. 409, 412 (8th Cir. 2012) (stating that plaintiff's allegations regarding constant hunger, small food portions, and weight loss were sufficient for purposes of preservice review); and *Davis v. State of Missouri*, 389 Fed. Appx. 579, 579 (8th Cir. 2010) (stating that allegations that plaintiff lost nineteen pounds during eight-month stay in jail due to insufficient food, and that he was always sick and lacking energy, were sufficient to survive preservice dismissal).

In this case, plaintiff does not provide any facts demonstrating that the food he is receiving is nutritionally inadequate or served in portions that are too small. Instead, he complains about the type of food he is receiving, and expresses a preference for different menu items. In particular, he

17

believes that certain foods "negatively impacts the hypothalamus[,] a spiritual gland that exists within the temple of [his] body." (Docket No. 1-9 at 3).

Plaintiff does list a series of symptoms he believes are connected to his diet, including bloody stool, extreme fatigue, dizziness, headaches, vomiting, abdominal pains, and chest pains (Docket No. 1-1 at 16). However, he acknowledges that these symptoms "are related to [an] autoimmune disorder," and presents no facts connecting this disorder with his diet in the SLCJC. There are also no allegations of constant hunger, small food portions, or weight loss. Furthermore, plaintiff has attached an exhibit from the SLCJC in which the SLCJC affirms that the meals he is being served meet nutritional guidelines. (Docket No. 1-9 at 8). Thus, plaintiff has not stated a claim of inadequate nutrition.

More fundamentally, plaintiff has entirely failed to demonstrate that any of the defendants are responsible for his diet. Among the five individual defendants are the Governor of Missouri, the Attorney General of Missouri, the former Attorney General of the United States, the CEO of the NYSE, and the CEO of UMB Bank Financial. None of these defendants work in the SLCJC, and none are alleged to be responsible for plaintiff's diet at the SLCJC. All defendants are sued in their individual capacities only, requiring a nexus between their actions and the violation of a constitutional right. There is not a single factual allegation, however, establishing a causal connection between one of these defendants and plaintiff's jail diet. Therefore, plaintiff's claim regarding inadequate nutrition must be dismissed.

### F.  Motion for Appointment of Counsel

Plaintiff has filed a motion for appointment of counsel. (Docket No. 3). The motion will be denied as moot as this action is being dismissed without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $2.50 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 3) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this order of dismissal would not be taken in good faith.

Dated this 17th day of August, 2022.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE